23205. EMPIRE STATE DEVELOPMENT CO. *v.* COGGINS.

Decided November 4, 1933.

*W. H. Burt, Leonard Farkas,* for plaintiff in error.

*E. L. Smith & Sons,* contra.

Guerry, J.   ■   F. H. Coggins brought suit against the Empire State Development Company, hereinafter called "the company," alleging that on May 5, 1926, plaintiff made an offer, through a letter, to publish an attractive article about Radium Springs in the "Country Homes Magazine." The letter read as follows: "We will be glad to make arrangements with our artist to secure the necessary photographs of your development when he is in your vicinity in the near future. As advised in our last letter, there is no obligation attached to the actual publishing of these views, but where we have to take the photographs and make the engravings, a charge is made to cover cost involved in handling this extra work. This would amount to five dollars for each photograph taken by our artist, and engravings made for publication are charged you on a basis of seventy-five cents the square inch. These charges are necessary owing to the considerable number of places we are constantly illustrating./ The photographs and engravings become your property and the photographs are sent to you for approval before any cuts are made. You probably understand, of course, that we will have an attractive article to accompany the illustrations and know that you will be well pleased with the arrangement." In reply to this letter the company wrote as follows: "It will be perfectly satisfactory for you to make the photographs on the basis of seventy-five cents per square inch for their insertion. In fact we accept your offer as outlined in your letter of May 5th." This letter was acknowledged by the plaintiff, and the company was advised that the artist photographer would "take these views when he comes to your section in the near future." It appears from the evidence that some months later the artist photographer appeared in Albany,

called on the company, and, according to the defendant's witness, the witness "told him [the photographer] to go ahead and take the photographs. I did not take him out and tell him what photographs to make." On January 7, 1927, the finished prints, arranged and numbered, were sent to the company with a letter apologizing for the delay. There was also enclosed a sketch made up for the engraver, the letter stating that the sketch "shows how we propose to illustrate the various views. This is only a suggestion of course, and we will be glad to make any changes that you should desire, but believe the sketch as outlined shows the place to the best possible advantage. If the sketch and arrangements are satisfactory, please return to us in replying, and we will advise just what data we require for descriptive matter that will accompany the illustrations, as we plan to have an attractive article in connection therewith." In reply to this letter the company wrote: "The photographs of scenes around Skywater Mineral Springs arrived a few days ago. A good many artists and newspaper photographers have taken pictures of this property, but I think those of your photographer are the most beautiful we have had. The outlay of illustrations which you mailed to us, and which we are returning, are entirely satisfactory. When you are ready to submit the descriptive matter, we will be glad to give it our attention. For your information we have changed the name from Skywater Mineral Springs to Radium Springs, due to the fact that this water is more radioactive than any in the United States." Replying to this letter the plaintiff wrote: "We are glad to know that you are so well pleased with the photographs as well as the arrangements for publication, and cuts are being made therefor accordingly for an early issue. We note the name of the change of your name of the springs, and for the article to accompany the cuts please give us all the data you can in reference to this development, such as, when opened, size of ground, buildings at present on property and any data you might think of in assisting us to write an attractive article around the illustrations. We are enclosing you statement herewith in line with our previous quotation on the subject."

The evidence disclosed that the statement sent was for the photographs taken and delivered as well as for the number of inches of engraved cuts as per the sketch sent to the company and returned by them as being satisfactory. The company offered to pay for the

photographs at the rate of five dollars each, but declined to pay for the engravings as made for insertion. The plaintiff testified that they were never published in the magazine, because the company refused to pay for them, but that they offered to publish them at any time without further cost upon payment for the making of the photographs and cuts. We think it can be seen without discussion, from the above correspondence between the plaintiff and the defendant, that the petition, based on such correspondence as constituting a valid contract, set out a cause of action. Our discussion, therefore, will be limited to the other ground of the demurrer, which contends that the action is barred by the statute of limitations.

■ We come now to consider the objection raised that the contract sued upon is barred by the statute, the suit having been filed in August, 1932. If the action is upon an ordinary assumpsit or account, the demurrer should be sustained. The original letters attached to the petition as exhibits show that there was an offer and acceptance entered into in May, 1926. If the suit is based alone on this agreement, more than six years had expired before the filing of the suit, and the action would be barred. It is alleged and shown that as a result of the preliminary agreements the plaintiff performed its offer made in May, and tendered the photographs and cuts to the defendant in January, 1927, and that they were approved and accepted by defendant, in writing. It was alleged that this was the time the contract became effective. In *Friedlander* v. *Schloss Brothers Co.*, 43 *Ga. App.* 646 (159 S. E. 870), it appeared that incomplete preliminary offers to sell and buy had been entered into between the parties, that later the seller shipped and delivered according to the terms of the original offer, and the buyer accepted the goods so delivered. It affirmatively appeared that there was no written order for the particular shipments; and the "liability for the purchase-price of the goods thereafter bought does not arise against the purchaser by reason of the written contract, but necessarily arises from the contract of sale subsequently entered into. . . The party to be charged with liability for the purchase-price of goods not having signed such writing [the order for the goods], no valid written contract existed between the parties by reason of such facts, for the purchase and sale of the goods. . . Under the foregoing rulings the liability of the defendants for the purchase-price of the goods sold was upon open account, and since the

cause of action accrued more than four years prior to the filing of the petition, the plea of the statute of limitations should have been sustained." In the case at bar it appears that there was a *written* approval and acceptance of the pictures and order for the cuts to be made; and in such a case there is a contract in writing which is not barred, because suit was filed within six years from the making thereof. The contract originally entered into was not a complete contract, for the reason that no definite number of photographs or cuts was agreed upon. When the plaintiff complied with this offer and tendered the photographs and sketches to the defendant and they were accepted in writing, the contract became complete and was an entire contract. The statute of limitations begins to run from the time a right of action accrues (*Rogers* v. *Chambers,* 112 *Ga.* 258, 37 S. E. 429) ; that is, when the claimant can legally sue. *Linder* v. *Rowland,* 122 *Ga.* 425 (50 S. E. 124). Measured by these rules, the letter of the defendant to the plaintiff was a written acceptance of plaintiff's tender of performance, thus making the contract complete. Therefore the claim was not barred. There was no error in overruling the demurrer.

■ The ruling stated in headnote 3 needs no discussion. However, we cite the following authorities. *Hicks* v. *Walker,* 17 *Ga. App.* 391 (2) (87 S. E. 152) ; *Jones & Phillips Inc.* v. *Patrick,* 11 *Ga. App.* 67 (74 S. E. 700) ; *Cooper* v. *Bowen,* 140 *Ga.* 45 (3) (78 S. E. 413) ; *Pullman Co.* v. *Schaffner,* 126 *Ga.* 609 (55 S. E. 933, 9 L. R. A. (N. S.) 407) ; *Baker* v. *Central Grocery Co.,* 15 *Ga. App.* 377 (83 S. E. 504).

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*